UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EVELYN CASTILLO, *on behalf of herself and all others similarly situated*,

                          Plaintiff,

-v-

HUDSON THEATRE, LLC, *d/b/a Hudson Theatre*,

                          Defendants.

18-CV-7931 (JPO)

---

EVELYN CASTILLO, *on behalf of herself and all others similarly situated*,

                          Plaintiff,

-v-

LYRIC THEATRE OF NEW YORK, INC., *d/b/a Lyric Theatre*,

                          Defendant.

18-CV-7943 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

In these consolidated putative class actions, Plaintiff Evelyn Castillo, who has diabetes, alleges that two Broadway theaters in Manhattan — Hudson Theatre, LLC ("Hudson") and Lyric Theatre of New York, Inc. ("Lyric") (collectively, "the Theaters" or "Defendants") — discriminate against her and other individuals disabled by diabetes and other metabolic disorders through the imposition of policies banning outside food from Defendants' facilities. Castillo alleges that those policies created an access barrier excluding people with metabolic disorders from full and equal enjoyment of the services provided by Defendants' facilities. She asserts claims under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; the New York State Civil Rights Law ("NYSCRL"), N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. The Theaters

1

move to dismiss Castillo's complaints for failure to state a claim upon which relief can be granted. (Dkt. No. 17.) [1] For the reasons that follow, the Theaters' motions are granted.

I. **Background**

The facts below are drawn from Castillo's complaint (*see* Dkt. No. 1 ("Compl.")) and are presumed true for the purposes of this motion.

Plaintiff Evelyn Castillo is a resident of Brooklyn, New York, who was diagnosed with diabetes mellitus and put on a restricted diet in 2006. (Compl. ¶ 19.) She cannot eat outside the parameters of her meal plan, and she must maintain constant and ready access to predetermined snacks to manage her blood sugar in case it drops suddenly. (Compl. ¶ 19.) If she is unable to have her snacks with her, she is susceptible to symptoms of low blood sugar such as weakness, dizziness, and confusion. (Compl. ¶¶ 20–21.) Waiting to eat — say, because she must stand in line to buy food — may exacerbate these symptoms further. *Id.* Buying food with an unknown amount of sugar, such as what might be available at the Theaters' concession stands, is also risky for Castillo, as she cannot anticipate either the effect it will have on her blood sugar or how much insulin she must consume along with it. (Compl. ¶ 20.)

Defendants Hudson and Lyric own and operate two theaters in New York City, which, it is undisputed, are "places of public accommodation under Title III of the ADA." (Compl. ¶ 23.) Among other things, the Theaters host events open to the public, including games, concerts, and other benefits. (*Id.*) Defendants state on the Theaters' websites that outside food and beverage is prohibited in the Theaters. (*See* Compl. ¶¶ 1, 12.)

---

[1] Castillo filed a complaint against each Defendant in this case, but the complaints are identical in form and substance. Both Defendants have also filed the same briefs in both cases. Accordingly, the citations in this opinion refer only to the docket of Case No. 18 Civ. 7931.

Castillo alleges that in the summer and fall of 2018, she intended to buy tickets to attend events at Defendants' theaters but did not do so due to their advertised policies of not allowing outside food. (Compl. ¶ 22.) She contends that this constitutes an "access barrier" for the purposes of the ADA, preventing "full and equal access to the goods and services provided by Defendant" to her and Class members. (Compl. ¶¶ 22, 24.)

On August 30, 2018, Castillo filed a Class Action Complaint against the Theaters, on behalf of herself and all others similarly situated, asserting that the Theaters' no-outside-food policies violate her and class members' rights under the ADA, the NYSCRL, and the NYCHRL. (Compl. ¶¶ 52–111.) Castillo seeks to represent a class composed of "all legally metabolically-disabled individuals in the United States who have attempted to access [Defendants' theaters] and as a result have been denied access to the enjoyment of goods and services offered [there] during the relevant statutory period." (Compl. ¶ 25.) On December 19, 2018, Defendants moved to dismiss Castillo's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 17.)

## II. Legal Standard

To survive a motion to dismiss for failure to state a claim, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when plaintiffs have pleaded facts that would allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Court[s] must accept as true all well-pleaded factual allegations in the complaint, and 'draw all inferences in the plaintiff's favor.'" *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (quoting *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006)) (formatting altered). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**III. Discussion**

"The ADA was promulgated 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities,' as well as to establish 'clear, strong, consistent, enforceable standards' for scrutinizing such discrimination." *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir. 1995) (quoting 42 U.S.C. § 12101(b)(1)–(2)). Title III of the ADA governs places of public accommodations. It guarantees that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation," 42 U.S.C. § 12182(a), such as a "theater . . . or other place of exhibition or entertainment," *id.* at § 12181(7)(C). Thus, to state a claim under Title III, Castillo must adequately allege "that (1) . . . she is disabled within the meaning of the ADA; (2) [the Theaters] own, lease, or operate a place of public accommodation; and (3) [they] discriminated against [her] within the meaning of the ADA." *Roberts v. Royal Atl. Corp.*, 542 F.3d 363, 368 (2d Cir. 2008).

The Theaters do not contest that Castillo has satisfied the first and second elements of the claim; only the third — that the Theaters discriminated against her within the meaning of the ADA — is at issue here. The relevant provision of the ADA defines discrimination as "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, or accommodations to individuals with

disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).[2] Castillo maintains that the "no-outside-food" policies deny her access to the Theaters and prevent her from receiving the services they offer because of her disability. (Compl. ¶ 61.) The Theaters argue that Castillo's complaint must be dismissed because she has not adequately pleaded that Defendants "fail[ed] to make reasonable modifications in policies." (Dkt. No. 18 at 5–6.) Specifically, the Theaters argue that they did not have notice of Castillo's disability and that she did not request a "reasonable modification" to their policies. (*Id.*)

    A.    **Notice**

"[N]otice of the alleged disability . . . is an assumed prerequisite" of a Title III claim for failure to make reasonable accommodations. *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 848 F. Supp. 2d 460, 466 (S.D.N.Y. 2012); *see also McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d 92, 97 (2d Cir. 2009) (listing notice as a required element of a failure to accommodate claim in an employment discrimination case). Thus, a "plaintiff must show that defendants had notice of her disability . . . [and] has the initial duty to inform the [defendant] of a disability before ADA liability may be triggered for failure to provide accommodations." *Thompson v. City of New York*, No. 98 Civ. 4725, 2002 WL 31760219, at *7 (S.D.N.Y. Dec. 9, 2002).

---

    [2] Castillo also asserts that Defendants discriminated against her pursuant to another provision of the ADA, in that they "fail[ed] to take such steps as may be necessary to ensure that no individual with a disability is excluded . . . because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(2)(a)(iii). The statute defines "auxiliary aids and services" to include: "(A) qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments; (B) qualified readers, taped texts, or other effective methods of making visually delivered materials available to individuals with visual impairments; (C) acquisition or modification of equipment or devices; and (D) other similar services and actions." 42 U.S.C. § 12103(1). Because Castillo does not allege any "auxiliary aid or service" that Defendants could provide to her, this argument is unavailing.

5

Castillo does not allege that she notified the Theaters that she needed to bring in outside food due to her metabolic disorder. Instead, she states that she attempted to purchase tickets and was deterred from doing so upon reading the Defendants' policies against bringing outside food into the Theaters. In defense of this omission, Castillo cites *Pickern v. Holiday Quality Foods*, 293 F.3d 1136 (9th Cir. 2002), for the proposition that deterrence from visiting a place of public accommodation due to access barriers constitutes injury for the purposes of Title III. *See Pickern*, 293 F.3d at 1136–37. That opinion, however, pertained to the issue of constitutional standing, holding that deterrence from visiting a place of public accommodation can constitute an Article III injury. *See id.* Though Castillo may have suffered an "actual injury" by being deterred from visiting the Theaters, she has not pleaded facts to show that the injury is due to the Theaters' refusal to modify their policies to accommodate her within the meaning of the ADA. This failure to provide notice of her disability to the Theaters or to allege some other means by which they might have had an opportunity to consider her need for accommodations is fatal to Castillo's claim.

### B.  Reasonable Modification

Castillo also fails to allege that she requested a reasonable modification to Defendants' policies that was subsequently refused. A plaintiff's request for a reasonable modification is necessary to determine whether the defendant could reasonably provide such modification and whether the defendant's subsequent failure to do so constitutes discrimination. *See Shaywitz*, 848 F.Supp.2d at 467. That is because "Title III's requirement that private entities make 'reasonable accommodations' for disabled individuals would be rendered meaningless if the entity had no basis for knowing (1) what accommodations the [plaintiff] was seeking, and (2) whether those accommodations were reasonable in light of the disability and the test." *Id.* (citing *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 309 (1st Cir. 2003)). "[T]he determination

6

of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Staron*, 51 F.3d at 356.

Castillo contends that the current policies and procedures on the Theaters' websites made it clear that the Theaters were unwilling to accommodate individuals with metabolic disorders. (Compl. ¶ 41.) Without her requesting an actual modification, though, it is impossible to determine whether the Theaters were actually unwilling to accommodate Castillo, rendering her allegations merely conclusory. *See, e.g.*, *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (finding that ADA claim had been stated only when "on numerous occasions, employees at defendants' restaurants were . . . willing to read [a blind person] [only] part of the menu, and. . . were unwilling to communicate effectively the range of options available to her.").

### C. "Futile Gesture" Exception

Castillo argues that her failure to notify the Theaters of her disability and her failure to seek a "reasonable modification" are excusable because taking those measures would have been "futile gesture[s]." (Dkt. No. 21 at 8–9.) The ADA does not require "a person with a disability to engage in a futile gesture [such as attempting to gain access to an inaccessible location] if such person has actual notice that a person or organization does not intend to comply [with the ADA]." 42 U.S.C. § 12188(a)(2) (emphasis added); see also Shaywitz, 848 F. Supp. 2d at 469 (noting that an ADA plaintiff need not lodge a futile request for an accommodation).

Castillo has not alleged any facts, however, to suggest that she had actual notice that the Theaters did not intend to comply with the ADA. She has not alleged, for example, that the Theaters maintained policies against individual exceptions to the no-outside-food rules or that the Theaters had a pattern of declining such requests, see Davoll v. Webb, 194 F.3d 1116, 1133

(10th Cir. 1999) (disabled employee not required to engage in "futile gesture" of requesting reasonable accommodation when employer had established policy against such accommodation), or that an employee or agent of the Theaters warned her that she would not receive an accommodation if she requested it, see Bultemeyer v. Fort Wayne Cmty. Sch., 100 F.3d 1281, 1285 (7th Cir. 1996) ("[Plaintiff] may have thought it was futile to ask, after [someone] told him that he would not receive any more special treatment.").3  To the contrary, the Theaters' websites contained several resources regarding ADA compliance, including contact information for a representative who could be reached regarding ADA accessibility.  See Hudson Theatre, Frequently Asked Questions, http://www.thehudsonbroadway.com/faqs/ (last visited Sept. 26, 2019); Lyric Theatre, Frequently Asked Questions, http://www.lyricbroadway.com/plan-your-visit/accessibility/ (last visited Sept. 26, 2019).  The defects in her pleadings therefore cannot be excused on the basis that notice and a request for an accommodation would have been futile gestures.

---

[3] The many cases cited by Castillo in support of her "futile gesture" argument deal with the issue of constitutional standing and are simply inapposite. *See, e.g.*, *Pickern*, 293 F.3d at 1136–37 (plaintiff, who used a wheelchair, was not required to have attempted to enter a visibly inaccessible grocery store to have suffered a concrete injury to confer standing); *Chapman v. Pier 1 Imports (U.S.), Inc.,* 631 F.3d 939, 949–50 (9th Cir. 2011) ("Plaintiffs need not engage in the futile gesture of returning to a building with known barriers that the owner does not intend to remedy [to assert standing to bring a claim]."); *Steger v. Franco*, 228 F.3d 889, 892 (8th Cir. 2000) ("[P]laintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying [to prove injury] . . . ."). Castillo's standing is not the issue here.  Similarly, cases pertaining to architectural and structural barriers to access — which are covered by a separate provision of the ADA, and which are often difficult to remedy and thus for which futility can perhaps sometimes be inferred — are not applicable to this case.

### D. Plaintiff's Supplemental Claims

Because Castillo's federal claims have been dismissed, and because Castillo does not argue this Court should retain jurisdiction over her remaining state and city law claims, this Court declines to exercise its supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3). Accordingly, Castillo's remaining claims are dismissed.

### IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and the Plaintiffs' complaints in these two actions are DISMISSED.

The Clerk of Court is directed to close the motions at Docket Number 17 in Case Number 18 Civ. 7931 and Docket Number 12 in Case Number 18 Civ. 7943.

SO ORDERED.

Dated: September 30, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge